| | | |
|---|---|---|
| LMSP, LLC, a North Carolina Limited Liability Company; NICHOLAS A. GELLER; CHANDLER CLARK; AND JAMES COOK; | ) ) ) ) ) | |
| Plaintiff, | ) ) | ORDER |
| vs. | ) ) | |
| TOWN OF BOONE, a body politic, and DANA CRAWFORD, individually, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on the Motion to Dismiss (Doc. No. 7) filed by Defendants Town of Boone and Dana Crawford. The parties fully briefed that motion (Docs. Nos. 10, 13). With the Court's permission (Doc. No. 19), the parties filed supplemental pleadings (Docs. Nos. 20, 21, 22), and the motion is now ripe. For the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss.

## I. BACKGROUND

Plaintiffs originally filed this action in the General Court of Justice, Superior Court Divison, Watauga County. (Doc. No. 1-1). Defendants subsequently removed the action to this Court based on federal question jurisdiction. (Doc. No. 1). The allegations in the verified[1] Complaint are fairly straightforward. Plaintiff LMSP is a North Carolina Limited Liability Company whose primary business is the immobilization of vehicles wrongfully parked in parking

---

[1] Each Plaintiff executed a verification attesting to the truth of the contents alleged in the Complaint. (Doc. No. 1-1, pp. 23-26).

lots and spaces. LMSP contracts with real property owners to monitor their parking lots for trespassing vehicles. LMPS employed the individual Plaintiffs Geller, Clark, and Cooke as subcontractors who immobilize the vehicles and collect money for the illegally parked vehicles.

Plaintiffs contend Defendant Crawford, the Police Chief for the Town of Boone Police Department, improperly enforced three ordinances found in Chapter 73 of the Boone, North Carolina Code of Ordinances: Chapter 73.09 Signs or notifications required before parking control devices or methods may be utilized in lots; Chapter 73.10 Operational requirements or person involved in the use of parking control devices or methods in parking lots or spaces; and Chapter 73.99 Penalty (collectively, "Ordinances").[2]

Specifically, Plaintiffs allege Crawford ordered his law enforcement officers to perform surveillance on Plaintiff Cooke, while he was performing his duties for LMSP. Plaintiffs contend the Boone Police Department "sent a citizen over to initiate a confrontation with Plaintiff Cooke in regards to the immobilization of [a] woman's car," whereby "an altercation ensued." (Doc. No. 1-1, p. 3). Plaintiffs' complaint is void of any reference to what occurred during the "altercation." Their Complaint simply says, as a result of the altercation, Plaintiff Cooke now has a "case [that] continues through the court system," and as such, "the Town of Boone has not allowed him to continue his occupation . . . as a vehicle immobilizer." Id.

Plaintiffs also contend the Boone Police Department, on two occasions, improperly issued citations to Plaintiffs Clark and Geller based on improper interpretations of the Ordinances

---

[2] In light of the length of these ordinances, the Court refrains from including their full text herein. The Court, however, takes judicial notice of and adopts and incorporates by reference the document containing the ordinance provisions attached to Defendants' Memorandum in Support of its Motion to Dismiss (See Doc. No. 8-1). Plaintiff neither objected to the exhibit nor otherwise challenged the accuracy of its contents, and the Court sees no need to restate the ordinance provisions in their entirety here.

requiring insignia on vehicles engaged in immobilization. Plaintiffs contend an unidentified "principal" for LMSP met with the Town of Boone Manager and Defendant Crawford to discuss the enforcement of Ordinances, who agreed that, in certain circumstances, immobilizer vehicles do not need to bear an insignia. (Doc. No. 1-1, p. 4).

Plaintiffs' complaint here sues both the Town of Boone and Defendant Crawford, in his official and individual capacities, asserting multiple causes of action related to the above instances and the Town of Boone's enforcement of the Ordinances for alleged violations of both the United States and North Carolina Constitutions, violations of 42 U.S.C. § 1983, negligence, and malicious prosecution. Plaintiffs also seek to enjoin the Town of Boone from enforcing portions of the Ordinances. Defendants have moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims against them. While the motion to dismiss was pending, the Town of Boone enacted an Amended Chapter 73 ("Amended Ordinances"), which revised and replaced each of the three Ordinance provisions challenged by Plaintiffs. Defendants supplemented their motion to dismiss arguing the Amended Ordinances mooted Plaintiffs' claims, and Plaintiffs responded.

## II. STANDARD OF REVIEW

Defendants' motion to dismiss requires this Court to consider whether Plaintiffs' complaint, on its face, articulates plausible claims upon which relief can be granted. The standard to review a motion challenging the sufficiency of the complaint is well-settled, particularly as the Fourth Circuit has explained application of Supreme Court precedent:

> [T]Supreme Court has brought to the forefront the Federal Rules' requirements that permit courts to evaluate complaints early in the process. Thus, in Iqbal, the Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id.  It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

To emphasize the Federal Rules' requirements for stating claims that are warranted and therefore form a plausible basis for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' " as required by Rule 8. Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2)). The Court noted that even though Rule 8 "marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).  Bearing these principles in mind, the

Court turns to each cause of action asserted in the Complaint: (1) Plaintiff Cooke's claim against

Defendant Town of Boone for substantive due process violations under the Fourteenth

Amendment of the United States Constitution and the North Carolina Constitution; (2) Plaintiffs'

claim against Town of Boone and Crawford, in his official capacity, for negligence; (3) Plaintiff

Geller's claim against Crawford in his individual capacity for malicious prosecution; (4) Plaintiff

Clark's claim against Crawford in his individual capacity for malicious prosecution; (5) Plaintiff

LMSP's claim against Town of Boone for substantive due process violations under the Fourteenth Amendment of the United States Constitution and the North Carolina Constitution; (6) Plaintiff LMSP's claim against Town of Boone for violation of the Equal Protection Clause; (7) Plaintiffs' claim against Town of Boone for violation of the North Carolina Constitution Article I, Section I and N.C. Gen. Stat. § 160A-174; (8) Plaintiff LMSP's claim against Town of Boone for violation of the First Amendment of the United States Constitution as applied to North Carolina by the Fourteenth Amendment; (9) Plaintiff Geller's claim against Crawford in his individual capacity for violation of 42 U.S.C. § 1983; (10) Plaintiff Clark's claim against Crawford in his individual capacity for violation of 42 U.S.C. § 1983; (11) Plaintiff Clark's and Geller's claim against Town of Boone for violation of 42 U.S.C. § 1983; (12) Plaintiff Cooke's claim against Town of Boone for violation of the North Carolina Constitution Article I, Section I and N.C. Gen. Stat. § 160A-174; and (13) declaratory judgment finding certain Town of Boone ordinances violate Plaintiffs' constitutional rights and exceed the statutory scope and authority.

### III. ANALYSIS

A.  Claims under the United States and North Carolina Constitutions

The Court notes at the outset the Town of Boone enacted the Amended Ordinances on January 19, 2017, after the filing of this action and following the filing of Defendants' initial motion to dismiss.  Plaintiffs never objected to supplemental briefing on these Amended Ordinances; accordingly, the Court permitted supplemental pleadings as to the impact on Plaintiffs' claims.  In response to Defendants' supplemental memorandum, Plaintiffs do not contest the authenticity of the Amended Ordinances and concede the amendments "drastically altered the rules governing Plaintiffs' business operations including completely changing some

rules including signage, warning and convictions." (Doc. No. 22, pp. 1-2). Furthermore, Plaintiffs recognize several portions of their causes of action were mooted by removal of the "offending section of the ordinance," but argue their claims survive because Plaintiff seeks monetary damages.

Mootness is primarily a function of the Article III "case or controversy" limitation on the jurisdiction of the Federal courts. However, because of the possibility of reenactment of an ordinance, "mere amendment or repeal of a challenged ordinance does not automatically moot a challenge to that ordinance." Am. Legion Post 7 of Durham, N.C. v. City of Durham, 239 F.3d 601, 605 (4th Cir. 2001) (citation omitted).

> The Supreme Court has held that in some circumstances, the repeal or amendment of a statute moots a challenge even where re-enactment of the statute at issue is within the power of the legislature. See Massachusetts v. Oakes, 491 U.S. 576, 582, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) (holding that the amendment of a law prohibiting nude photography of minors mooted First Amendment overbreadth challenge to law); Kremens v. Bartley, 431 U.S. 119, 132, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977) (holding that the repeal of a statute permitting involuntary commitment of juveniles mooted challenge to statute). The practical likelihood of reenactment of the challenged law appears to be the key to the Supreme Court's mootness jurisprudence in situations such as this one. See Erwin Chemerinsky, Federal Jurisdiction 139 (3d ed.1999) (summarizing the Supreme Court's jurisprudence by stating that "cases will not be dismissed as moot if the Court believes there is a likelihood of reenactment of a substantially similar law if the lawsuit is dismissed").

Am. Legion, 239 F.3d at 606.

Here, nothing suggests the Town of Boone might return to its prior Ordinances. Plaintiffs appears to concede that but for the existence of claims for monetary damages, their challenges to several provisions of the Ordinances are now moot. Therefore, the Court finds the Amended Ordinances (See Doc. No. 21-1) moot the majority of Plaintiffs' challenges to the constitutionality of the previous Ordinances (Counts 6, 7, 8, 12, 13). However, to the extent Plaintiffs' claims

present demands for monetary relief and permit survival of these claims, the Court addresses the sufficiency of the Complaint below.

1.      Substantive Due Process

Defendants move to dismiss Plaintiffs' claims under the Due Process Clause of the Fourteenth Amendment to the United States Constitution (Counts 1 and 5).  Under the Due Process Clause of the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause has "procedural and substantive components."  Plyler v. Moore, 100 F.3d 365, 374 (4th Cir. 1996). To survive a motion to dismiss their substantive due process claims, Plaintiffs' complaint must allege "(1) that [it/he] had property or a property interest; (2) that the state deprived [it/him] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 827 (4th Cir. 1995) (emphasis in original).  Plaintiffs face a significant hurdle, since an action is illegitimate "only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power . . . ." Id. When a plaintiff alleges a state legislative act violates a right entitled to substantive due process protection, a court must engage in a two-step inquiry.  Hawkins v. Freeman, 195 F.3d 732, 739 (4th Cir. 1999).  "First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition . . . . Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S.

702, 720–21 (1997) (internal quotations and citations omitted).  A court in our sister district of the

Middle District of North Carolina recently explained:

> [D]etermining substantive due process claims involves an assessment of "the reasonableness of the governmental decision."  Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 80 (4th Cir. 2016).  A court begins this assessment by asking whether the challenged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).  If it does not meet that test, the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest. Id. If it does meet the threshold test of culpability, the court's inquiry must turn to the nature of the asserted interest and the level of protection to which that interest is entitled. Hawkins, 195 F.3d at 738. Meeting this threshold test is difficult. Cty. of Sacramento, 523 U.S. at 849 (conduct shocks the conscience when it is "intended to injure in some way unjustified by any governmental interest") (emphasis added).

Clemmons v. Guilford Tech. Cmty. Coll., No. 1:16CV482, 2017 WL 3128104, at *8 (M.D.N.C.

July 21, 2017).  In considering Plaintiffs' related claims under North Carolina law, Article I,

Section 19 of the North Carolina Constitution, the "Law of the Land" clause, is synonymous with

the term "due process of law" as used in the Fourteenth Amendment.  In re Moore, 221 S.E.2d

307, 309 (N.C. 1976).

Here, none of Plaintiffs' allegations, even collectively, rise to the level of conduct "so

egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

Hawkins, 195 F.3d at 738.  Even if Defendants' alleged conduct could be so construed, Plaintiffs

substantive due process claims still fail.  Plaintiffs generally refer to "a fundamental property right

to engage in the lawful business of illegally parked vehicle immobilization."  Presuming such a

specified property right exists, police action, as described in the Complaint, to enforce the Town

of Boone Ordinances against those engaged in the business of vehicle immobilization is

reasonable, particularly since it involves the involuntary seizure of another's property and demand

for payment.  See Conn v. Gabbert, 526 U.S. 286, 291–92 (1999)  ("In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." (citations omitted)); see also King v. Town of Chapel Hill, 367 N.C. 400, 408, 758 S.E.2d 364, 371 (2014) ("Given the tension between vehicle owners' personal property rights and the right to remove vehicles illegally parked on private property, these provisions appear to be a rational attempt at addressing some of the inherent issues affecting citizen health, safety, or welfare that arise when one's car is involuntarily towed.").

To the extent Court 1 alleges the Town illegally utilized police powers and presence to surveil a legally operating business, Cooke improperly asserts this as a substantive due process violation.  "Comings and goings on public streets are public matters, and the Constitution does not disable police from observing what every member of the public can see."  California v. Ciraolo, 476 U.S. 207, 224 (1986).  Allegations that police watched Plaintiff Cooke while he booted cars in a publicly accessible parking lot subject to the Town of Boone's ordinances do not sufficiently plead any constitutional violation; and, even if they did, substantive due process would not be the source of relief.  Cooke's bare assertions that "Defendant [Town of] Boone engaged the services of a local citizen to escalate the situation" involving Cooke and a "lady whose care had been immobilized" are likewise insufficient to state a substantive due process violation. (Doc. No. 1-1, p. 6).  Indeed, Plaintiffs' allegations immediately following these indicate the "agitation of the situation caused Cooke to suffer the loss of a fundamental property interest . . . ." Id.  To the contrary, Cooke's general accusations that the Town of Boone (without reference to any

individual) "engaged" a citizen to "escalate" the situation, without more, is insufficient to state a plausible substantive due process violation. Plaintiffs bear the burden of pleading in their complaint that it is more than a "sheer possibility" that Defendants acted unlawfully. Iqbal, 556 U.S. at 678.

Accordingly, Plaintiffs' Complaint fails to state a claim for violations of substantive due process under either the United States or North Carolina Constitutions. Counts 1 and 5 are therefore dismissed.

### 2. Equal Protection Clause

Defendants also move to dismiss Plaintiffs' claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Count 6). The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person equal protection of the laws. U.S. Const. amend. XIV, § 1. This constitutional provision "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). The equal protection requirement "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citing Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). This is because "[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." Romer v. Evans, 517 U.S. 620, 631 (1996). Therefore, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."

<u>Williams v. Hansen</u>, 326 F.3d 569, 576 (4th Cir. 2003) (internal quotation and citation omitted). If a plaintiff has made this showing, a court considers whether the "disparity in treatment can be justified under the requisite level of scrutiny." <u>Id</u>.

Here, Plaintiffs do not allege membership in a suspect class and, as ruled above, they also failed to allege violation of a fundamental right. Plaintiffs' Complaint likewise fails to support their claim with an allegation as to a similarly-situated business also bound by the applicable Ordinances governing immobilizers on private property. Plaintiffs' passing reference to another company and its operation on *public* property, and therefore outside the governance of the applicable Ordinances at issue here, does not save their claim.

Even if Plaintiffs' allegations could be construed as sufficiently pleading different treatment for two similarly-situated businesses, Plaintiffs still fail allege facts to overcome the presumption that the Town of Boone's ordinances are relationally related to the purpose of promoting public safety and welfare, including the impact immobilizers have on personal property. Many of Plaintiffs' allegations fail to show disparate treatment or disparate impact, because these allegations concern non-disparate treatment under facially-neutral policies, applicable to every other vehicle immobilizing company operating on private property. It is not enough that Plaintiffs were impacted by regulations promulgated by Defendants. Plaintiffs must instead sufficiently allege they were impacted by the Ordinances that affected them disparately from others similarly situated, which Plaintiffs have not alleged. Accordingly, Plaintiffs have failed to state a claim for relief under the Equal Protection Clause, and Count 6 is dismissed.

       3.     First Amendment / Free Speech

Defendants also move to dismiss Plaintiffs' claim for violation of their right to free speech (Claim 8). Plaintiffs' Complaint alleges the signage and verbal warning requirements of the Ordinances §§ 73.09 and 73.10 violate their First Amendment Rights. Ordinances § 73.09 requires a certain number of signs of a certain size and color, and containing certain information to be posted for a person to "authorize, direct, contract for, implement, or apply a parking control device" in a parking lot to which the Ordinances apply. (Ordinances § 73.09(A)-(B), Ex. A, at 910.) Plaintiffs have not alleged they own or lease any of the real property on which the lots are situated. Accordingly, they do not have standing to challenge the sign postage requirements, as they do not allege the "speech" required is their own. Rather, Plaintiffs contend the signage requirements are "speech" that affects their business; however, this does not implicate Plaintiffs' own First Amendment rights.

Even if Plaintiffs had standing, the Supreme Court has "held that in some instances compulsion to speak may be as violative of the First Amendment as prohibitions on speech . . . ." Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 650 (1985). In Zauderer, the Court also recognized the "material differences between disclosure requirements and outright prohibitions on speech." Id.

> Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, [a party's] constitutionally protected interest in not providing any particular factual information in his advertising is minimal. Thus, in virtually all our commercial speech decisions to date, we have emphasized that because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, warning[s] or disclaimer[s] might be appropriately required . . . in order to dissipate the possibility of consumer confusion or deception.

Id. at 651 (citations and quotations omitted). The Supreme Court held "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." Id. Similarly, here, the disclosure requirements set forth in the ordinances are reasonably related to the Town of Boone's interests in protecting citizen health, safety, and welfare. See King v. Town of Chapel Hill, 758 S.E.2d 364, 371 (N.C. 2014) ("Given the tension between vehicle owners' personal property rights and the right to remove vehicles illegally parked on private property, these provisions appear to be a rational attempt at addressing some of the inherent issues affecting citizen health, safety, or welfare that arise when one's car is involuntarily towed."). The Court grants Defendants' motion to dismiss Plaintiffs' Count 8.

4.     Claims Under the North Carolina Constitution

For the same reasons the claims under the United States Constitutional claims fail, the Court finds Plaintiffs failed to adequately plead claim for relief under the North Carolina constitution on the above-referenced counts.[3] In addition, Plaintiffs fail to sufficiently plead the non-existence of any adequate state-law remedy. Copper ex rel. Copper v. Denlinger, 688 S.E.2d 426, 428 (N.C. 2010) ("To assert a direct constitutional claim against the Board for violation of his procedural due process rights, a plaintiff must allege that no adequate state remedy exists to provide relief for the injury.") (citing Corum v. Univ. of N.C., 413 S.E.2d 276, 289 (N.C. 2009) ("Therefore, in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution.")). Plaintiffs' failure to

---

[3] Neither Plaintiffs nor Defendants challenge this Court's exercise of supplemental jurisdiction over any of Plaintiffs' claims arising out of state law. Accordingly, the Court considers "the values of judicial economy, convenience, fairness, and comity" and finds that exercise of supplemental jurisdiction and resolution of Plaintiffs' state law claims here is appropriate. Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

allege the non-existence of an adequate remedy of law is fatal to this claim, particularly where Plaintiffs also allege state law claims based on the same injury – impairment of business and payment of fines.  "This is true even if the plaintiffs burden of proof on his state-law claim may be different, or if the claim may be subject to additional affirmative defenses, like public official immunity."  Haynes v. City of Durham, No. 12CV1090, 2016 WL 469608, at *7 (M.D.N.C. Feb, 5, 2016) (citing Debaun v. Duszaj, 767 S.E.2d 353, 357 (N.C. Ct. App. 2014) ("[T]he fact that plaintiff must overcome the affirmative defense of public officer immunity to succeed on his tort claims does not negate their adequacy as a remedy.").  Here, even if Plaintiffs' North Carolina tort claims against Defendants are subject to affirmative defenses, the claims are for the same injury as the alleged constitutional violations and are therefore adequate alternative claims, subjecting Plaintiffs' North Carolina constitutional claims to dismissal as a matter of law.

Plaintiffs' seventh cause of action alleges their "right to work and earn a livelihood" has been violated contrary to N.C. Const. Art I, Section I.  Plaintiffs cite to King v. Town of Chapel Hill, a case from the North Carolina Supreme Court to support their claim and in opposition to the motion to dismiss.  758 S.E.2d at 371.  In King, the Court recognized "the fundamental right to 'earn a livelihood.'"  Id. (quoting Roller v. Allen, 96 S.E.2d 851, 854 (N.C. 1957); see also State v. Harris, 6 S.E.2d 854, 863 (N.C. 1940) ("While many of the rights of man, as declared in the Constitution, contemplate adjustment to social necessities, some of them are not so yielding. Among them the right to earn a living must be regarded as inalienable.")).  In King, the Court considered its "duty to protect fundamental rights includes preventing arbitrary government actions that interfere with the right to the fruits of one's own labor."  758 S.E.2d at 371 (citing N.C. Const. art. I, § 1; Roller, 245 N.C. at 525, 96 S.E.2d at 859 ("A state cannot under the guise of

protecting the public arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions on them." (citations omitted))). In King, the North Carolina Court held the town "exceeded its authority by *imposing a fee schedule* for nonconsensual towing from private lots" and noted "[t]he prices that citizens pay for towing are *wholly unrelated to the protection of citizen health or safety*, leaving only the question of whether the fee schedule provision falls under the protection of citizen welfare." Id. (emphasis added).

Ordinances as to the allowable rates and their obvious impact on a businesses ability to exist are "wholly" distinguishable from the Town of Boone Ordinances challenged here. The Ordinances challenged in Plaintiffs' complaint provide for a registration and licensing system, identification badges, and require an attempt at a spoken warning to unauthorized users. This Court has already explained the reasonableness and necessity of these regulations above. None of these regulations significantly impact the cost of doing business, as was the case in King, and, likewise, none of the Ordinances implicate Plaintiffs' "right to earn a livelihood." Plaintiffs have therefore failed to state a claim upon which relief could be granted, and Count 7 is dismissed.

For these reasons, Plaintiff Cooke's related cause of action – Count 12 – also fails. First, as mentioned above, this claim is moot. The Complaint makes clear "Plaintiff Cooke is *currently awaiting adjudication* in regards to the charges he received on June 6, 2014. . . . *If* convicted[,] Plaintiff Cooke *will be* unable to pursue his livelihood pursuant to Chapter 73.99." (Doc. No. 1-1, pp. 13-17) (emphasis added). Not only do the Amended Ordinances moot Cooke's claim here, but also, it appears his claim for monetary damage did not even ripen prior to adjudication of this case since no injury is alleged – only a *potential*, *future*, *possible* loss. Count 12 is dismissed.

B. Claims under 42 U.S.C. § 1983

Defendants move to dismiss Plaintiffs causes of action under 42 U.S.C. § 1983 on several grounds. Defendants argue the doctrine of qualified immunity bars the claims against Chief Crawford in his individual capacity (Counts 9 and 10) and Plaintiffs fail to state plausible claims against the Town of Boone (Count 11). Under § 1983, a state actor may be held liable if that actor "subjects, or causes to be subjected" an individual "to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Section 1983, however, does not create any new right or benefit; it simply provides a mechanism for enforcing aright or benefit established elsewhere. Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002). As explained above, Plaintiffs have not sufficiently plead plausible claims to show a deprivation of constitutional rights against any Defendants. Accordingly, Plaintiffs' § 1983 claims cannot survive.

In light of this ruling, the Court need not address Defendants' additional arguments regarding qualified and municipal immunity; however, a review of Plaintiffs' allegations and application of these doctrines provides an alternative basis for dismissal.

> Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); see also Kentucky v. Graham, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test (the "qualified immunity test"): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a "clearly established" right "of which a reasonable person would have known." See Mellen v. Bunting, 327 F.3d 355, 365 (4th Cir. 2003) (citing Hope v. Pelzer, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); Harlow, 457 U.S. at 818, 102 S.Ct. 2727) (internal quotation marks omitted); see also Wilson, 526 U.S. at 609, 119 S.Ct. 1692.

<u>Ridpath v. Bd. of Governors Marshall Univ.</u>, 447 F.3d 292, 306 (4th Cir. 2006). Plaintiffs cannot overcome this test and in fact, Plaintiffs failed to articulate *any* opposition to the qualified immunity arguments stated in Defendants' Memorandum. (Doc. No. 8, pp. 17-20; Doc. No. 10). Accordingly, for the reasons stated in Defendants' Memorandum, the Court finds qualified immunity to bar Plaintiffs' § 1983 claims against Crawford in his individual capacity. For these reasons, Counts 9 and 10 are dismissed.

Turning to Plaintiffs' § 1983 claims against the Town of Boone via the accusations against Crawford in his official capacity, Plaintiffs' Complaint fails to sufficiently allege a claim for municipal liability.

> "Local governing bodies [ ] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [ ] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A plaintiff can make such a showing by demonstrating (1) an express or written policy, (2) the decisions of a person with policymaking authority, (3) a failure to properly train officers demonstrating a deliberate indifference to citizens' rights, or (4) a practice that is so persistent it constitutes a custom or usage with the force of law. <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003).

<u>Pratt-Miller v. Arthur</u>, No. 17-1024, 2017 WL 2838329, at *1 (4th Cir. July 3, 2017). As already explained, Plaintiffs' complaint falls short of alleging a violation of a constitutional right.

Even if Plaintiffs had properly pled a deprivation of rights, for liability to attach for an unconstitutional custom or usage, "(1) the municipality must have 'actual or constructive knowledge' of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage." <u>Randall v. Prince George's Cnty., Md.</u>, 302 F.3d 188, 210 (4th Cir. 2002). A "custom or usage" cannot be established by proof of a single

constitutional violation. <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1391 (4th Cir. 1987) ("[P]roof of a single violation . . . obviously cannot support an inference that the violation resulted from a municipally condoned custom of comparable practices").

Here, Plaintiffs complain of only two incidents where the Ordinances were allegedly improperly enforced, over a period of few weeks, from December 23, 2014, through January 15, 2016. Even if Plaintiffs' Complaint properly stated a claim for violation of their constitutional rights, they do not allege "persistent" or "widespread" violations, nor do they sufficiently allege Chief Crawford acted with specific intent to violate their constitutional rights. Plaintiffs' legal conclusions, set forth without a sufficient basis in fact, do not save this claim. Plaintiffs have not pled a sufficient claim for municipal liability against Chief Crawford in his official capacity under 42 U.S.C. § 1983. Accordingly, Count 11 is dismissed.

C. State tort claims

Defendants argue for dismissal of Plaintiffs' state claims, as well. First, Defendants contend the public duty doctrine bars Plaintiffs' negligence claim against the Town of Boone and Crawford (Count 2). "Under the public duty doctrine, a state or municipal government is free to enact laws for public protection without exposing the government to liability for failing to properly enforce such laws, including negligent enforcement." <u>Town of Nags Head v. Toloczko</u>, No. 2:11-CV-1-D, 2014 WL 4219516, at *18 (E.D.N.C. Aug. 18, 2014) (<u>citing</u> <u>Braswell v. Braswell</u>, 410 S.E.2d 897, 901 (N.C. 1991); <u>Britt v. City of Wilmington</u>, 73 S.E.2d 289, 293 (N.C. 1952); <u>Christmas v. Cabarrus Cnty.</u>, 664 S.E.2d 649, 652–53 (N.C. Ct. App. 2008), <u>disc. rev. denied</u>, 678 S.E.2d 234 (N.C. 2009)). Despite the public duty doctrine, two narrow exceptions exist: "a government can be liable (1) where there is a special relationship between the governmental entity

and the injured party; or (2) where the governmental entity creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered." Town of Nags Head, 2014 WL 4219516, at *18 (citing Hunt v. N.C. Dep't of Labor, 499 S.E.2d 747, 750–51 (N.C. 1998); Scott v. City of Charlotte, 691 S.E.2d 747, 754–55 (N.C. Ct. App.2010); Lane v. City of Kinston, 544 S.E.2d 810, 814 (N.C. Ct. App. 2001)).  Here, nothing in the allegations suggest these exceptions are applicable, and the public duty doctrine bars Plaintiffs' negligence claim against the Town of Boone.

To the extent Plaintiffs also assert a negligence claim against Crawford in his official capacity, such claim is not plausible under applicable law.  "Where an official capacity claim is concerned, the claim is not truly against the individual, but against the governmental entity she represents." Davison v. Loudoun Cty. Bd. of Supervisors, No. 1:16CV932 (JCC/IDD), 2017 WL 3158389, at *9 (E.D. Va. July 25, 2017) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  "There is no . . . need to bring official-capacity actions against local government officials" like Defendant "for . . . local government units can be sued directly for damages and injunctive or declaratory relief" under § 1983." Davison, 2017 WL 3158389, at *9 (citing Kentucky v. Graham, 473 at 170 n.14).  The negligence claim against Crawford in his official capacity is dismissed.

Turning to Plaintiffs' other torts under state law, Defendants contends public official immunity bars Plaintiff's claims for malicious prosecution against Crawford in his individual capacity (Counts 3 and 4).  "Public officials are generally immune from personal liability for negligence in the performance of their duties unless evidence demonstrates that they acted

maliciously, corruptly, or outside the scope of their official authority." Bishop v. Cty. of Macon, 620 F. App'x 148, 150 (4th Cir. 2015) (citing Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003); Wilcox v. City of Asheville, 730 S.E.2d 226, 238 (N.C. Ct. App. 2012)). Mere allegations cannot defeat immunity. See Bishop, 620 F. App'x at 150 (citing Shaw v. Stroud, 13 F.3d 791, 803 (4th Cir.1994)). A plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 570). Further, in applying Iqbal to test the sufficiency of the allegations, this Court must "draw on judicial experience and common sense" to determine whether plaintiffs' well-pleaded, non-conclusory allegations *collectively* nudge the issue of malice "across the line from conceivable to plausible." 556 U.S. at 679–80 (emphasis added). In this case, considering the isolated instances identified in the Complaint, even collectively, Plaintiffs have failed to present a *plausible* claim of malice. Accordingly, Plaintiffs' Complaint fails to sufficiently state claims for malicious prosecution, and Counts 3 and 4 are dismissed.

    D. Constitutional challenges to the ordinances and request for declaratory relief

    As noted above, Plaintiffs' claims arising in Court 13 and their request for declaratory relief are mooted by the Amended Ordinances enacted by the Town of Boone. Even were Plaintiffs' Count 13 not moot, the Court's previous rulings on all previous counts above warrant dismissal of this claim, as well.

## IV. CONCLUSION

    Plaintiffs' Complaint fails to set forth plausible claims for relief. At best, the allegations barely suggest a "sheer possibility" that Defendants acted unlawfully. Plaintiffs' Complaint as a

whole fails to articulate facts adequate to "show" the "plausibility" of entitlement to relief." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557)). IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. No. 7) is GRANTED.

IT IS SO ORDERED.

Signed: September 29, 2017

Frank D. Whitney
Chief United States District Judge